O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GUADALUPE VALLE,                    )   NO. CV 08-4389-MAN
                                    )
               Plaintiff,           )
                                    )   MEMORANDUM OPINION
     v.                             )
                                    )   AND ORDER
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
               Defendant.           )
_____)

     Plaintiff filed a Complaint on July 2, 2008, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability ("POD") and disability insurance benefits ("DIB"). On October 16, 2008, the parties consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on April 2, 2009, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the case to the Commissioner for a new administrative hearing; and defendant asks that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for a POD and DIB on October 25, 2004, alleging an inability to work since August 2, 2004, due to complications from hepatitis C and depression. (Administrative Record ("A.R.") 13, 101-03.)  Plaintiff has past relevant work experience as a lamp painter, packer, administrative assistant, and aircraft assembler. (A.R. 14.)

The Commissioner denied plaintiff's claim for benefits, and plaintiff timely requested a hearing.  (A.R. 81-86.)  On January 22, 2007, plaintiff, who was not represented by counsel, appeared and testified, with the assistance of a Spanish language interpreter, at a hearing before Administrative Law Judge Robert J. Grossman ("ALJ"). (A.R. 20-78.)

In his written decision, the ALJ indicated that, plaintiff "stated at the hearing that she was amending her application to request a 'closed period' of disability from August 2, 2004 to July 2, 2005." (A.R. 13.)  Notwithstanding the fact that if, in fact, plaintiff had so amended her application, then the 12-month durational requirement established by 42 U.S.C. § 423(d)(1)(A) would not have been met, the ALJ nevertheless addressed whether plaintiff was disabled from August 2, 2004, to July 2, 2005.  (A.R. 19.)

On August 2, 2007, the ALJ denied plaintiff's claim (A.R. 13-19), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 2-4).

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the nondisability requirements for a POD and DIB, and was insured for benefits through June 30, 2006. (A.R. 18.)  The ALJ further found that plaintiff had been engaging in substantial gainful activity since October 12, 2006.  (*Id.*)

The ALJ determined that plaintiff had the following "severe" impairment:  hepatitis C.  (A.R. 18.)  The ALJ found that the "medical evidence does not support the contentions of [plaintiff] and her husband," and plaintiff "was not limited to the degree she has alleged during the period in question."  (A.R. 16-17.)

Consistent with the opinion of the consultative internal medicine examiner, Barry Gordon Gwartz, M.D., the ALJ found that plaintiff was able to:  lift 20 pounds occasionally; lift and carry 10 pounds frequently; and walk and stand for six hours in an eight hour work day. (A.R. 18-19.)

Based on the ALJ's residual functional capacity assessment and the testimony of a vocational expert, the ALJ found that plaintiff would have been, and still is, able to return to any of her past relevant jobs.  (A.R. 18.)  Accordingly, the ALJ concluded that plaintiff was not under a disability, as defined in the Social Security Act, at anytime through June 30, 2006, her date last insured.  (A.R. 19.)

///
///
///

3

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006) (*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges three issues: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ considered plaintiff's treating physician's opinion properly; and (3) whether the ALJ erred in determining the credibility of plaintiff and her husband.  (Joint Stipulation ("Joint Stip.") at 6.)

**I.   <u>The ALJ Failed To Fully And Fairly Develop The Record</u>.**

In social security cases, the law is well-settled that the ALJ has an affirmative "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)(citations omitted).  "This duty extends to the represented as well as to the unrepresented claimant." *Id.*  When a claimant is not represented by counsel, an ALJ "must be especially diligent in exploring for all the relevant facts." *Id*.  The ALJ's duty to develop the record extends from the basic premise that social security hearings are not adversarial in nature. <u>Orcutt v.</u>

5

Barnhart, 2005 WL 2387702, *3 (C.D. Cal. 2005); *see also* Sims v. Apfel, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)(*citing* Tonapetyan, 242 F.3d at 1150). "In cases of mental impairments, this duty is especially important." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1990); *see also* Tonapetyan, 242 F.3d at 1150 (an ALJ has a heightened duty to develop the record where the claimant is mentally ill and therefore unable to protect her own interests).

Plaintiff contends that the ALJ failed to fully and fairly develop the record. (Joint Stip. at 6.) Specifically, plaintiff contends that the ALJ: was argumentative with plaintiff, who was unrepresented, at the hearing; failed to consider all evidence of record; and failed to conduct the appropriate inquiry with respect to missing administrative record pages and plaintiff's psychiatric treatment. (Joint Stip. at 7-11.) After reviewing the record, the Court agrees.

The Court has read the hearing transcript in its entirety, and it is clear that the ALJ was unnecessarily argumentative with plaintiff, who was unrepresented and required the assistance of a Spanish language interpreter, during what should have been a proceeding that was "non-

1   adversarial in nature."[1]   Orcutt, 2005 WL 2387702 at *3.   The ALJ

2   repeatedly interrupted plaintiff's responses and, at one point during

3   the hearing, blatantly mischaracterized the record by telling plaintiff

4   that the consultative examiner "didn't think [plaintiff] was motivated

5   to go to work" and that "[h]e thought [she] w[as] feeling not well and

6   so [she] elected to take it easy rather than push [her]self to work."

7   (A.R. 47-48.)   The consultative examiner's report does not support the

8

9   [1]   In her portion of the Joint Stipulation, plaintiff points to the
10   following exchange between the ALJ and plaintiff to demonstrate how
     argumentative the ALJ was with plaintiff during the proceedings:

11       ALJ:        Yeah, but why should I believe that, why should I,
12                   number one, why should I believe that the
                     medications made you ill, and why should I believe
13                   that you were so ill that you couldn't go to work?

     CLMT:       Why would I lie?
14
     WTN:        Can I speak to the claimant?
15
     ALJ:        No.
16
     CLMT:       Well, what would I lie for?
17
     ALJ:        To get benefits, that's why people come here.
18                   They, they come in here and I don't say, everybody
                     lies, maybe no one lies, but the reason I'm here is
19                   to be sure that you're not lying.   You're asking
                     the Government to give you money, not a gift, that
20                   is not charity.   This is not a social welfare
                     program.   This is a program based upon your
21                   inability to earn a living and you have the burden
                     or [sic] proving that you are unable to earn a
22                   living.   In your case, you're saying it was for a
                     stated period of time, you're, you're saying I'm
23                   okay now, not like I'd like to be, but I'm okay to
                     work, but you're also saying, I could not go to
24                   work and earn a salary in a competitive job for a
                     year and a half, and why should I accept that as
25                   being true.   What have, what have you brought me
                     that proves that, aside from the fact that you say
26                   you are sick, who else says you were so sick that
                     you couldn't work, and what have they said that
27                   proves it?

28   (A.R. 68-69.)

7

ALJ's assertion regarding plaintiff's lack of motivation.  (*See* A.R. 149-53.)

Similarly, at the hearing, the ALJ repeatedly demanded that plaintiff, who received a high school education in Mexico, "tell me where I should look, what document, what page, says that you were too sick to work." (A.R. 69.)  When she failed to do so, the ALJ boldly stated, in derogation of his duty to be "especially diligent in exploring for all the relevant facts," that he was "not going to hunt for 50 pages of lab reports," and "d[id] [not] want to have to go through and read all of [the lab reports]." Tonapetyan, 242 F.3d at 1150; (A.R. 69.)  Taking the ALJ's statements at face value, the Court cannot be certain that the ALJ actually read and considered all the evidence of record.  Indeed, after reviewing the record, specifically the "50 pages of lab reports" that the ALJ did not "want to have to go through," the Court notes, as does plaintiff's counsel, that some pages are missing, *i.e.*, of a four-page exhibit, pages one through three appear to be missing.  (A.R. 158; Joint Stip. at 9.).  Moreover, not only did the ALJ fail to endeavor to obtain pages missing from plaintiff's lab reports, but the ALJ also failed to ask any questions regarding the pages of plaintiff's lab reports that were included in the record, which bear directly on the nature and extent of plaintiff's claimed limitations.

Further, the ALJ failed to develop the record regarding plaintiff's psychiatric impairment and treatment.  (Joint Stip. at 10.)  The ALJ rejected plaintiff's claim of depression, indicating that "her depression never rose to the level that it required any ongoing formal

8

mental health treatment." (A.R. 17.) However, the record includes psychiatric records from Kaiser Permanente from June 2004, through November 2004, as well as progress reports from plaintiff's treating physician, one of which is dated February 8, 2005, which document that plaintiff was "being followed by psychiatry" and was taking several anti-depressant and anti-anxiety medications, including Prozac and Ativan. (A.R. 225, 255-57, 258-61.) As plaintiff correctly notes, the February 2005 progress note, indicating that plaintiff was still in psychiatric treatment, suggests that other, relevant psychiatric records may exist. The ALJ should have developed the record on this issue by asking questions about plaintiff's mental health treatment and by attempting to obtain plaintiff's psychiatric records.[2] (A.R. 225; Joint Stip. at 10.)

As plaintiff was not represented by counsel, the ALJ had a heightened responsibility to assist plaintiff during the hearing and to develop all facts, both for and against disability, so that the ALJ could make a proper disability determination on a complete record. Tonapetyan, 242 F.3d at 1150. The ALJ failed to satisfy his duty here. Although defendant correctly notes that plaintiff's counsel, whom plaintiff retained prior to requesting review of the ALJ's decision by the Appeals Council, had the opportunity to supplement the record, the ALJ has the duty to develop the record, even where a claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.

_____

[2]   It is especially important for the ALJ to develop the record fully and fairly with respect to plaintiff's claimed mental impairment, because, not only was plaintiff unrepresented at the hearing, but, as plaintiff asserts, "[p]sychiatric records cannot be obtained by the patient as the records will not be released to the individual under treatment." (Joint Stip. at 10.)

1  1983).  While defendant's point is well-taken, the ALJ should have, and
2  did not, seek to develop the record fully by attempting to obtain all of
3  plaintiff's relevant medical records.

5      Finally, the Court believes that the ALJ's assertion regarding
6  plaintiff's purported decision to seek an 11-month closed period of
7  disability -- plaintiff "stated at the hearing that she was amending her
8  application to request a 'closed period' of disability from August 2,
9  2004 to July 2, 2005" (A.R. 13) -- reflects the result-oriented and
10 hostile manner with which the ALJ approached plaintiff's claim.  Indeed,
11 after reviewing the hearing transcript, the Court concludes that
12 plaintiff did not, by her testimony or otherwise, "amend[] her
13 application" to request a closed period of disability.  (A.R. 13.)  In
14 fact, plaintiff testified that her treatment for hepatitis C lasted for
15 48 weeks, but that she continued to experience debilitating side-effects
16 from the treatment for the next few months, or at least until October
17 2005.  (A.R. 44-46.)  The hostile approach to plaintiff may also
18 explain, but clearly does not justify, the ALJ's failure to fully and
19 fairly assess the record.

21     Accordingly, this matter should be remanded for the ALJ to obtain
22 and consider any and all outstanding medical records, including
23 psychiatric records, treatment notes, and laboratory results, and to
24 determine what impact, if any, they may have on the ultimate
25 determination of whether plaintiff was disabled for a period of 12
26 months or longer.
27 ///
28 ///

1  **II.  The ALJ Failed To Set Forth The Requisite Specific And Legitimate**

2      **Reasons For Rejecting The Opinion Of Plaintiff's Treating**

3      **Physician, And The ALJ Improperly Relied On The Opinion Of The**

4      **Consultative Examiner.**

5

6          In assessing a claimant's residual functional capacity, the Social

7  Security Administration's regulations favor "the opinion of a treating

8  physician over non-treating physicians." Orn, 495 F.3d at 631; *see also*

9  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); 20 C.F.R. §

10 404.1527(d)(1)-(2).  Generally, a treating physician's opinion is given

11 greater weight, because "'he is employed to cure and has a greater

12 opportunity to know and observe the patient as an individual.'"

13 Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(citation

14 omitted).  If a treating physician's opinion is "well-supported by

15 medically-acceptable clinical and laboratory diagnostic techniques and

16 is not inconsistent with the other substantial evidence in [the] case

17 record, [the Commissioner] will give it controlling weight." 20 C.F.R.

18 § 404.1527(d)(2).

19

20          If there is "substantial evidence" in the record that contradicts

21 the opinion of a treating physician, such as an examining physician's

22 opinion supported by independent clinical findings, the opinion of the

23 treating physician is no longer entitled to controlling weight.  Orn,

24 495 F.3d at 632.  However, a finding that the treating physician's

25 opinion "is not entitled to controlling weight does not mean that the

26 opinion is rejected."  Social Security Ruling 96-29 at 1 ("In many

27 cases, a treating source's medical opinion will be entitled to the

28 greatest weight and should be adopted, even if it does not meet the test

for controlling weight."). In such an instance, the Social Security regulations still require deference to the treating physician's opinion, but the weight accorded it is governed by the factors listed in the regulations, such as length, nature, and extent of the treatment relationship, frequency of examination, and supportability. 20 C.F.R. § 404.1527(d)(2); <u>Orn</u>, 495 F.3d at 632-33. When the opinion of a treating physician is contradicted, it may be rejected by the ALJ only for "specific and legitimate" reasons based on substantial evidence in the record. <u>Reddick</u>, 157 F.3d at 725; <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).

In a letter dated July 5, 2005, plaintiff's treating physician, Afshin Khatibi, M.D., who specializes in gastroenterology, stated that plaintiff was "evaluated and treated in this clinic for a chronic medical condition [hepatitis C] with treatment starting on August 5th, 2004 and continuing for 48 weeks." (A.R. 133.) Dr. Khatibi reported that the [s]ide effects from this treatment are often quite severe and include fatigue, lethargy, insomnia, depression, fevers, diarrhea, anemia (which requires additional therapy to correct) and overall inability to perform regular work." (*Id.*) On July 5, 2005, Dr. Khatibi opined that plaintiff "was unable to work due to [the] above symptoms from August 5th, 2004 and will likely require several months for her symptoms to completely resolve now that she has completed therapy." (*Id.*)

In a follow-up letter, dated January 16, 2007, Dr. Khatibi set forth the details of the treatment plaintiff underwent for hepatitis C, and he reported the significant side effects that plaintiff suffered as

a result of the treatment. (A.R. 252.) Dr. Khatibi stated that plaintiff suffered from headaches, abdominal pain, fatigue, and anemia. (*Id*.) In addition, Dr. Khatibi noted that plaintiff experienced dizziness, mood swings, insomnia, nausea, diarrhea, and a dry cough. (*Id*.) Plaintiff also experienced significant weight loss, joint aches, blurred vision, depression, and anxiety. (*Id*.) In October 2005, Dr. Khatibi reported that plaintiff continued to have "persistent anemia, and abdominal pain," and in November 2005, she developed an abnormal thyroid condition which later required thyroid replacement therapy. (*Id*.) As of January 2006, plaintiff reported "still feeling 'tired.'" (*Id*.)

The ALJ rejected Dr. Khatibi's opinion and instead relied on the opinion of the consultative examiner, Dr. Gwartz, in assessing plaintiff's residual functional capacity. (A.R. 16-18.) However, the reasons set forth by the ALJ for rejecting Dr. Khatibi's opinion were not legitimate, and the ALJ's reliance on Gwartz's opinion was not based on substantial evidence.

The ALJ's primary reason for rejecting Dr. Khatibi's opinion was that his opinion was not supported by the medical evidence of record. (A.R. 17.) However, a review of the record indicates otherwise. The record is replete with treatment notes and progress reports documenting the significant side effects and attendant limitations plaintiff experienced as a result of her hepatitis C treatment, through at least early 2006, which were consistent with Dr. Khatibi's opinion. (*See* A.R. 232 - August 16, 2005: plaintiff treated with primary care physician for abdominal pain and vomiting; A.R. 234 - August 24, 2005: plaintiff

13

reported epigastric discomfort; A.R. 236 - September 19, 2005: plaintiff continues to suffer from anemia; A.R. 237-38 - November 10, 2005: plaintiff diagnosed with subclinical hypothyroidism due to Interferon treatment, as well as complaints of fatigue, tiredness, and weight gain; A.R. 239 - November 24, 2005: back and lower abdominal pain, and vomited three times; A.R. 240 - January 19, 2006: treating for abdominal pain; A.R. 241 - January 27, 2006: abdominal and lower back pain, and diarrhea for 3 days; A.R. 243 - March 3, 2006: lower back and joint pain; A.R. 244 - March 8, 2006: lower back pain and joint pain, depression, and anxiety; A.R. 245 - March 23, 2006: depression, start Prozac; A.R. 246 - May 25, 2006: depression, increase Prozac dosage.) As plaintiff correctly notes, the ALJ discussed only a scant ten pages of plaintiff's medical records in rendering his decision, rather than considering and summarizing the evidence of record as a whole. (A.R. 16-17; Joint Stip. at 30.) While plaintiff's symptoms may have "waxed and waned in intensity," as the ALJ noted, plaintiff's symptoms clearly persisted, as Dr. Khatibi opined they likely would, throughout the duration of her treatment and for several months after her treatment ended.[3]

Further, as plaintiff's treating doctor, with whom plaintiff treated on a regular and consistent basis, Dr. Khatibi was in the best position to render an opinion regarding the nature and extent of plaintiff's impairments. His opinion should have been given great

---

[3] The ALJ correctly noted that "at no time was [plaintiff] ever described as severely or persistently physically debilitated." (A.R. 17.) This is not a legitimate reason for rejecting the opinion of a treating physician. There is no requirement that a physician use "magic words," such as those suggested by the ALJ, for a plaintiff to qualify for disability benefits.

14

weight.  *See* 20 C.F.R. § 404.1527(d)(2) (stating that generally more weight is given to opinions from treating sources since those sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations).  Moreover, as a specialist in gastroenterology, Dr. Khatibi's opinion should have been given more weight than the opinion of a source who is not a specialist.  *See* 20 C.F.R. § 404.1527(d)(5); *see*, *e.g.*, <u>Benecke v. Barnhart</u>, 379 F.3d 587,594 n.4 (9th Cir. 2004)(stating that opinion of specialist about medical issues related to that specialist's area of specialty is to be given greater weight).

The ALJ relied, at least in part, on the opinion Dr. Gwartz, the internal medicine consultative examiner, in formulating his residual functional capacity assessment.  (A.R. 18.)  However, a review of Dr. Gwartz's opinion shows that it was based upon a limited physical examination and plaintiff's self-reported history, and only modest objective testing, such as range of motion testing, an assessment of plaintiff's vital signs, and a liver function study.  (A.R. 149-55.) Critically, in his report, Dr. Gwartz noted that "[t]here were no medical records available for review." (A.R. 150.)  In view of this, it is unclear whether Dr. Gwartz based his assessment on a sufficiently complete picture of plaintiff's condition.  *See* 20 C.F.R. § 404.1517 ("If we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition."); *see also* <u>Ladue v. Chater</u>, 1996 WL 83880, *5 (N.D.

Cal. 1996)(requiring remand where "[t]he ALJ failed to conform to 20 C.F.R. § 404.1517 requiring that the consultative examiner be provided with necessary background information regarding the claimant's condition," in a case in which consultative examiner "was provided with only one progress note from Kaiser," and court found that "it appears from the record that the ALJ gave [the] consultative report considerable weight, even though [the consultative examiner] was lacking important background information regarding plaintiff").  Here, unlike in Ladue, Dr. Gwartz was not provided with any of plaintiff's medical records. See Nalley v. Apfel, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000)("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner"); Hurstrom v. Barnhart, 233 F. Supp. 2d 1159, 1166 (S.D. Iowa 2002)("There is no indication that either [consultative physician] had access to any of the medical records which were available at the time of their examinations. . . .   Even if Plaintiff told the consulting doctors that he had no limitations, these statements are not credible in light of the numerous laboratory reports showing that his blood sugar is out of control.").

Consequently, because Dr. Gwartz's assessed plaintiff's residual functional capacity without a review of her medical records, the Court cannot conclude that it constitutes substantial evidence. See 20 C.F.R. § 404.1545(a) (a claimant's residual functional capacity is an assessment based upon all of the relevant evidence); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)(medical expert opinions constitute substantial evidence only when they are supported by the record and consistent with it).

On remand, if after clarifying and developing the record,[4] the ALJ still concludes, *based on all the relevant medical evidence*, Dr. Khatibi's opinion should be rejected, then the ALJ must provide specific and legitimate reasons for rejecting it.

### III. **The ALJ Failed To Provide The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony.**

The law is well-settled that, once a disability claimant produces evidence of an underlying physical impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 2001)(*en banc*); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's

_____

[4]   The ALJ should have contacted plaintiff's treating physician for clarification of his opinion, if, as the following question posed by the ALJ appears to indicate, he found plaintiff's treating physician's July 2005 opinion to be inadequate and unclear:

> Q:   Your doctor said you were being treated for 48 weeks, but he didn't tell us what you could do and what you couldn't do, he just said he was treating you.  That's your treating physician, in July of 2005, he said you have completed 48 weeks of therapy for an unspecified GI disorder.  And she, he said you have an overall . . . inability to perform regular work since August 5, 2004, but he didn't give any specific functions that you were unable to perform, or any reasons why you were unable to perform regular work, whatever that is in his mind . . .

(A.R. 47.)  *See* 20 C.F.R. § 404.1512(e) (duty to re-contact treating physician); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (highlighting requirement that Commissioner re-contact treating source when information from treating source is inadequate to make a determination regarding disability).

17

reasons for rejecting the claimant's subjective symptom testimony must be "clear and convincing." Lester, 81 F.3d at 834.  Further, the ALJ's credibility findings must be "sufficiently specific" to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa, 367 F.3d at 885.

Both in her filings with the Commissioner and in her testimony, plaintiff described various subjective symptoms from which she claimed to suffer.  In a Function Report - Adult questionnaire dated November 18, 2004, plaintiff complained that "[her] joint[s] hurt so [she] [could not] lift things over 15 pounds [and] to bend or stand for long periods cause[d] [her] a lot of pain. [She] [felt] dizzy much of the time[,] notice[d] that [she] [forgot things] a lot and [she] ha[d] a hard time concentrating." (A.R. 113.)  Plaintiff also stated that she [felt] like [she] ha[d] flu symptoms at least 4 to 5 days [per week], [her] muscles hurt [and] her bones ache[d]." (A.R. 115.)

Further, plaintiff testified that, as a result of her Interferon therapy treatment for hepatitis C, she suffered significant side-effects, including: "vomiting, diarrhea, fevering, all of [her] bones [would] hurt, [she] felt super tired, dizzy, [she] lost a lot of weight[, and she] was losing [her] vision." (A.R. 42.)  Plaintiff testified that on some days, she "couldn't even get out of bed," because she "felt very weak" and "would tremble all over." (A.R. 42-43.)  In response to the ALJ's question regarding why plaintiff was unable to work, plaintiff stated:

1    How can I possibly work, if I get up in the morning, . . . I
2    was vomiting 10 times a day, and diarrhea at the same time I
3    was sitting, having so much diarrhea and vomiting I couldn't
4    sleep.  My husband had . . . to help me bathe [be]cause I
5    didn't have the strength of the balance, [be]cause I fell in
6    the bath tub, my husband would sit me in the tub and he bathed
7    me and washed my hair.  How am I going to work if I can't even
8    get up without fear of falling over.  I would [have] terrible
9    insomnia, I went sometimes days without sleeping.  I got a
10   thyroid problem as a consequence, [and] anemia . . . .

11

12  (A.R. 43.)  Critically, plaintiff testified that she was "still sick

13  eight months after [she] stopped the treatment," and that she "started

14  to feel better . . . [in] February, March . . . [of] 2006." (A.R. 45,

15  77.)

16

17       In his decision, the ALJ rejected the credibility of plaintiff's

18  subjective complaints regarding her inability to work even during the

19  48-week course of Interferon therapy (A.R. 19, ¶ 5), based upon:

20  apparent inconsistencies in plaintiff's testimony; plaintiff's ability

21  to engage in limited household chores; and a lack of medical evidence to

22  support her contentions.  (A.R. 17-18.)  When examined in the light of

23  the record as a whole, these reasons does not withstand scrutiny.

24

25       First, the ALJ rejected plaintiff's complaints regarding her

26  subjective symptoms based upon what the ALJ characterized as

27  inconsistencies in plaintiff's statements.  (A.R. 17-18.)  For example,

28  the ALJ noted that "[plaintiff] stated on a November 2004 questionnaire

that she was basically unable to do any normal activities," but then "the questionnaire completed by [plaintiff's husband] stated that [plaintiff] was able to do the laundry, dishes, light cooking, and make the bed." (*Id.*)  However, the ALJ mischaracterizes the record.  A review of the record as a whole indicates that, in a Function Report – Adult questionnaire dated November 18, 2004, while plaintiff stated that she felt "weak, tired, and sleepy," she also stated that she was able to do some light household chores and cook "occasionally." (A.R. 110, 115.) Specifically, plaintiff stated that "sometimes [she] wash[es] the dishes," "wash[es] the clothes 2 times a week," and cooks "some frozen meals and very simple stuff [such as] beans, rice or meat." (A.R. 110.) Consistent with plaintiff's statements, plaintiff's husband stated in a Function Report Adult Third Party questionnaire dated November 18, 2004, that plaintiff "does not cook as much.  She usually cooks frozen foods, easy to cook items such as beans, rice or chicken."  (A.R. 118.) Moreover, and again consistent with plaintiff's statements, plaintiff's husband stated that he "often help[s] [plaintiff] with household chores because she is to[o] tired (fatigued) or is feeling ill," but that plaintiff is able to do some house hold chores "about twice a week." (A.R. 116, 118.)  The ALJ may not, as he did here, reach a conclusion first and then justify it by ignoring competent evidence in the record. *See* Regennitter v. Comm'r, 166 F.3d 1294, 1297 (9th Cir. 1999) ("inaccurate characterization of the evidence" constitutes error); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  Accordingly, the ALJ's selective reading of the record, to justify his adverse credibility finding, constitutes error.

Second, although it is not entirely clear, the ALJ seemed to reject

20

the credibility of plaintiff's statements regarding the nature and extent of her subjective symptoms, because her husband stated that "[plaintiff] was able to do the laundry, dishes, light cooking, and make the bed." (A.R. 18.) However, the ALJ's casual reference to plaintiff's limited ability to engage in daily activities to support his rejection of plaintiff's subjective complaints fails to demonstrate how plaintiff's limited performance light household chores translates into the ability to engage in full-time work. *See* Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)(noting that daily activities may not be relied upon to support an adverse credibility decision where those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis); Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989)("if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding [which was not made in the instant case] as to this fact may be sufficient to discredit an allegation of disabling excess pain.").

Finally, the ALJ's assertion that "[t]he medical evidence does not support the contentions of [plaintiff]" is not a convincing reason in and of itself to reject plaintiff's subjective complaints. (A.R. 16.) It is well-settled that an ALJ may not discredit a claimant's subjective claims of disabling limitations for the sole reason that the alleged degree of her limitation(s) is not fully supported by the objective medical evidence. *See* Fair, 885 F.2d at 601-02; Stewart v. Sullivan, 881 F.2d 740, 743-44 (9th Cir. 1989). Plaintiff is not required to adduce medical evidence sufficient to corroborate the severity of her alleged limitations resulting from the significant side effects she

claimed to suffer.[5]

Accordingly, the ALJ's rejection of plaintiff's credibility without setting forth clear and convincing reasons for the rejection constitutes reversible error.   On remand, the ALJ must provide reasons, if they exist and in accordance with the requisite legal standards, for discrediting plaintiff's subjective symptom testimony.

**IV.   The ALJ Should Reconsider The Lay Witness Statements Of Plaintiff's Husband On Remand.**

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant.   <u>Stout</u>, 454 F.3d at 1053.   "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 404.1513(d)(4) ("we may also use evidence from other sources to show the severity of your impairment(s) . . .   Other sources include, but are not limited to . . . spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy").   "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'"   <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1114 (9th Cir. 2009)(citation omitted).   Further, the reasons "germane to each

---

[5]   It is important to note that, although the ALJ rejected plaintiff's credibility regarding her subjective symptom complaints, the ALJ conceded that "[plaintiff's] fatigue, gastrointestinal problems, and joint pains are consistent with the side effects of Interferon therapy." (A.R. 17.)

witness" must be specific.  Stout, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)), particularly, when, as in Vincent, "lay witnesses [are] making medical diagnoses," because "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(original emphasis).  When as here, however, a lay witness testifies about a claimant's symptoms, such testimony is competent evidence and cannot be disregarded without comment.  Id.  Under Stout, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  454 F.3d at 1055.

At the hearing, plaintiff's husband testified that he observed plaintiff suffer from "fatigue, lethargy, insomnia, depression, fever, diarrhea and anemia." (A.R. 73.) He further testified that plaintiff's symptoms "lasted a lot longer than just one, two, three months after" her Interferon treatment for hepatitis C ended, until "well into the end of 2005, January, 2006." (A.R. 73, 75.)

Here, the ALJ rejected the credibility of plaintiff's husband's statements regarding plaintiff's symptoms. (A.R. 16.) In rejecting the

23

husband's statements, however, the ALJ stated only that "[t]he medical evidence does not support the contentions of [plaintiff's] . . . husband." (*Id.*)   Contrary to the ALJ's conclusion, plaintiff's husband's testimony is supported by the medical evidence, which documents the various subjective symptoms about which plaintiff complained.   More importantly, under the clearly established Ninth Circuit precedent, this one reason is not sufficiently "specific" to warrant rejection of the testimony of plaintiff's husband regarding plaintiff's symptoms. *See* <u>Stout</u>, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

As this case is being remanded for further development of the record, and proper consideration of both the opinion of plaintiff's treating physician and the credibility of plaintiff's statements, the ALJ should reconsider the testimony and statements made by plaintiff's husband regarding his observations of plaintiff's subjective symptoms, and the ALJ must provide more specific reasons for rejecting the credibility of plaintiff's husband's statements.

**V.   <u>Remand Is Required.</u>**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   *Id.* at 1179

("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.   *Id.*

Although plaintiff has not challenged the ALJ's conclusion that plaintiff's mental impairment is not "severe," the record is replete with references to and diagnoses of depression, and plaintiff is taking medication for depression.   (*See, e.g.*, A.R. 133, 217, 225, 227, 231, 251-52, 256-7, 265.)   Even the ALJ noted that plaintiff "is still taking medicine for depression." (A.R. 15.)   On remand, the ALJ must consider the impact of all of plaintiff's impairments, whether "severe" or not, on her ability to engage in and sustain full-time work.   *See* <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th Cir. 1993)(ALJ must consider "all factors" that might have a significant impact on claimant's ability to work); *see also* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe").

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors and to assess properly whether plaintiff was unable to work on a sustained basis for a period of 12 months or longer commencing on August 2, 2004, and continuing until, at the latest, October 12, 2006, when plaintiff resumed working.   (*See* A.R. 49 - plaintiff testified that she "started

working [on] October 12th of 2006.")[6]  *See, e.g.,* <u>Benecke</u>, 379 F.3d at 593 (remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 23, 2010

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

---

[6]    Both plaintiff and her husband testified that, by in or about February or March 2006, plaintiff "started to feel better." (A.R. 46, 75-77.)

26